[No. 33333.  *En Banc.*  September 27, 1956.]

LOIS M. DIECKMAN, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*Fey, Wheeler & Kitchell,* for appellant.

*The Attorney General* and *Harold J. Hunsaker, Assistant,* for respondent.

SCHWELLENBACH, J.—September 19, 1952, Donald Dieckman was killed in a logging accident on the premises of the

[1] Reported in 301 P. (2d) 763.

Auburn Lumber Company. September 25, 1952, Lois M. Dieckman filed her claim for a widow's pension with the department of labor and industries, which was rejected. The board of industrial insurance appeals, on March 31, 1954, affirmed the board's action. Claimant's appeal to the superior court for King county was dismissed with prejudice on the ground that there was insufficient evidence to present any question to the jury. This appeal follows.

Jet Dieckman, brother of the deceased, owned some logging equipment consisting of a truck and "cherrypicker." A cherrypicker is a small crane or lifting device, equipped with a winch and cable. It is used for lifting, moving, loading, or unloading logs. At the end of the cable are tongs or hooks, which engage the logs in the process of lifting or moving them. Apparently the device can be used by two men, but it is more efficiently used by a crew of three. In the latter instance, one man operates the winch, another fastens the tongs into the logs, and the third physically guides or directs the logs as they are lifted or moved by the cherrypicker.

The two brothers usually worked together in various logging and other activities. Jet heard that the Auburn Lumber Company was interested in obtaining someone with a cherrypicker and truck to move logs from a stockpile to a pond on the premises of the company. He contacted the company bookkeeper, who later, about September 1, 1952, telephoned him. Jet hesitated to accept the job because he was not sure whether his brother Donald would be available. He contacted Donald, found he would be available, and discussed with him methods of pay. Jet favored doing the work for so much per thousand feet, but he accepted Donald's suggestion that they be paid on an hourly basis.

In a telephone conversation between Jet and the bookkeeper the following night, a rate of ten dollars per hour for the two men and equipment was discussed. The bookkeeper was not able to decide the matter, but he suggested that they come down and start the next morning. Jet and Donald went down in the morning and were met by the

owner, who, in response to a question, told them where to start work.

The owner assisted the two brothers in the operation by hooking the tongs into the logs. Jet and Donald alternated in running the winch and in guiding the logs as they were moved by the cherrypicker. After two days of work, the pond was sufficiently filled with logs to permit the mill to operate for awhile. At the end of the second day, Jet picked up the check for the work done. Upon his suggestion, it was made out to him, and the brothers agreed between themselves that they would divide the pay, each brother receiving $2.50 per hour, and Jet receiving the additional five dollars per hour for the use of the equipment, he paying all operating expenses. In about the same manner, the two brothers worked at the mill on two subsequent occasions. It was on the third such occasion that a log fell on Donald, injuring him fatally.

It was stipulated that Donald was engaged in extrahazardous work on the premises of the Auburn Lumber Company at the time of his death.

It is the theory of appellant that Donald Dieckman was killed at the Auburn Lumber Company while working there as an independent contractor.

Section 2, chapter 211, Laws of 1937, p. 1030 [cf. RCW 51.08.180], provides:

"The term workman within the contemplation of this act means every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his personal labor for any employer coming under this act whether by way of manual labor or otherwise in the course of his employment."

We must look to the contract to determine whether its essence was the personal labor of Donald Dieckman for the company. An employer may contract with two workmen, the essence of which is their joint personal labor. See *White v. Department of Labor & Industries,* 48 Wn. (2d) 470, 294 P. (2d) 650.

The only testimony in the record is that given by Jet Dieckman. It indicated that the bookkeeper knew, dur-

ing the preliminary negotiations, that Jet would associate with his brother in doing the job. Jet testified positively that he was not the boss and that his brother was "more of a boss" than he was, and that they merely worked together, each doing whatever needed to be done. This, coupled with the indecisiveness of the bookkeeper regarding whom the check should be made out to, would support a conclusion that the two brothers were on an equal basis in the work for the Auburn Lumber Company. Jet was not working for Donald, nor Donald for Jet, but they were jointly working as independent contractors for the company.

■ In passing upon the sufficiency of the evidence to present a case to the jury in workmen's compensation cases, we will review all the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *Dayton v. Department of Labor & Industries,* 45 Wn. (2d) 797, 278 P. (2d) 319.

We do not feel that the fact that the owner assisted the brothers in moving the logs, of itself, is sufficient to justify a holding that the essence of the contract was not the personal labor of Jet and Donald Dieckman. The record is silent as to why the owner worked with them. The work could have been done without his help. This case is distinguishable from the *White* case, *supra*, where, in order to complete the work, Mr. and Mrs. White were compelled to employ a man to assist them.

■ However, we do believe that the decision in the *White* case is decisive of the problem confronting us. That case held that, where an independent contractor must of necessity supply machinery or equipment as distinguished from ordinary hand tools, the essence of his contract is not his personal labor. Here the company contracted for the labor of two men and a cherrypicker (most certainly not an ordinary hand tool). The compensation was to be ten dollars per hour for the two men and equipment. The equipment was necessary for the performance of the contract.

The essence of the contract was not the personal labor of Jet and Donald Dieckman.

The judgment is affirmed.

DONWORTH, C. J., MALLERY, HILL, WEAVER, and OTT, JJ., concur.

FINLEY, J. (dissenting)—A claim for a widow's pension was denied by the department of labor and industries on October 24, 1952. The board of industrial insurance appeals, on March 31, 1954, affirmed the department's action. On appeal to the superior court for King county, a motion by counsel for the department raised the question as to whether the evidence in the record before the board presented any question for a jury. The motion was sustained, and the cause of action was dismissed with prejudice. This appeal followed.

In the record before the board of industrial insurance appeals, counsel for the claimant stated, in effect, that the usual or commonplace employee-employer relationship was not involved in the case; that the validity of the claim depended upon whether the decedent was a *workman*, as defined in Laws of 1937, chapter 211, § 2, p. 1030 [*cf.* RCW 51.08.180], amending the workmen's compensation act, which reads:

"The term workman within the contemplation of this act means every person in this state who is engaged in the employment of or who is *working under an independent contract, the essence of which is his personal labor for any employer coming under this act whether by way of manual labor or otherwise in the course of his employment.*" (Italics mine.)

Laws of 1939, chapter 41, § 2, p. 122 [*cf.* RCW 51.08.070], amending the workmen's compensation act, defines *employer* as ". . . any person . . . engaged . . . in any extra-hazardous work, by way of trade or business, or who contracts *with one or more workmen*, the essence of which is the personal labor of such *workman* or *workmen*, in *extra-hazardous* work." (Italics mine.)

The significant facts in this case are set out in the majority opinion.

In *Dayton v. Department of Labor & Industries,* 45 Wn. (2d) 797, 278 P. (2d) 319, quoting from *Mutti v. Boeing Aircraft Co.,* 25 Wn. (2d) 871, 172 P. (2d) 249, the court said:

" 'In the determination of such challenge [to the sufficiency of the evidence] or motion, even though the plaintiff's evidence is in some respects unfavorable to him, he is not bound by the unfavorable portion of such evidence, but is entitled to have his case submitted to the jury on the basis of the evidence which is most favorable to his contention.' "

Considering the evidence contained in the board's record in the light most favorable to the claimant, this court must determine whether the evidence would support conclusions by a jury that the decedent was working (a) as an independent contractor "for any employer coming under" the act, and (b) whether the essence of his employment contract was his personal labor, manual or otherwise.

In *Norman v. Department of Labor & Industries,* 10 Wn. (2d) 180, 116 P. (2d) 360, in referring to the two above-mentioned 1937 and 1939 legislative amendments to the workmen's compensation act, the court said:

"We hold that it was the intention of the legislature to broaden the industrial insurance act, and bring under its protection independent contractors whose personal efforts constitute the main essential in accomplishing the objects of the employment, and this, regardless of who employed or contracted for the work."

In *Haller v. Department of Labor & Industries,* 13 Wn. (2d) 164, 124 P. (2d) 559, the court said:

"Whether or not, in a given case, an independent contractor is a 'workman' must, we think, depend upon the provisions of the contract, the nature of the work to be performed, the situation of the parties, and other attendant circumstances."

Prior to enactment of the two above-mentioned amendments to the workmen's compensation act, only employees in the ordinary sense of the term (workman or workmen, as defined in the act) were entitled to industrial insurance benefits. As a result of the amendments, inde-

pendent contractors whose personal labor, *manual or otherwise*, is the essence of the contract became entitled to industrial insurance benefits.

In *Glover v. Richardson & Elmer Co.*, 64 Wash. 403, 116 Pac. 861, the court said:

"Whether a person performing work for another is performing it as an independent contractor or as the servant or employee of that other is a question not always easy of solution, but all of the authorities agree that the test of the relationship is the right of control on the part of the employer."

Supervision, direction, and control, relative to methods of doing or accomplishing work, seem to be the factors or characteristics most strongly emphasized in distinguishing or differentiating between the status of *employee* and the status of *independent contractor*. Basically, some kind of contract—that is, a relationship of contract—is involved in the usual situation regarding the performance of work by a *servant or an employee*. Similarly, there is a contractual relationship in the performance of work by an *independent contractor*. Where work is to be performed by either (1) an employee or (2) an independent contractor, a relationship of employment exists. In the first, normally, there is the factor of supervision and direction by the employer; in the second, the factor of supervision and direction is minimal or nonexistent. In the latter instance, the end product or the end result of the work performed is said to be the thing bargained for—and this factor is said to be a distinguishing characteristic of the relationship of independent contractor.

With the foregoing reasoning in mind, it seems to me that, in the instant case, the factor of supervision and direction by an employer was perhaps minimal or nonexistent, although the owner of the Auburn Lumber Company worked right along with the two Dieckman brothers as a member of the three-men crew engaged in the work of moving logs from the stockpile to the pond on the company's premises. The evidence in the record before the board most favorable to the claimant shows that the company bookkeeper did not know how the check should be made out to the Dieckmans

in payment for the work done; however, the bookkeeper and the owner knew that the two brothers would work together in moving the logs. The latter fact was known when the work was commenced, and, as I view the evidence and the circumstances involved, both Jet and Don were, in effect, accepted or expected to do the required work.

In other words, in viewing the evidence in the light most favorable to the claimant and in considering the circumstances involved in the work project, I think that a jury could have concluded that a contractual relationship existed between the company and the decedent, and that the status of the decedent was that of an independent contractor. The majority agree with this conclusion.

The remaining question is whether there was evidence from which a jury could have concluded that the personal labor of the decedent, manual or otherwise, was the essence of the contract. I am convinced that the question should be answered in the affirmative. The cherrypicker did not operate by itself, i.e., automatically. The personal labor of both brothers was essential to the performance of the work, or the contract. The fact that the use of the cherrypicker, also, was essential to the performance of the work did not prevent the personal labor, manual or otherwise, of the two brothers from being essential or of the essence in the performance of the work, i.e., the contract. In the usual run-of-the-mill employee-employer relationship, where an employee is carried on the payroll, his work closely supervised, and he is in all other respects treated and regarded strictly as an employee, the fact that he uses a power saw rather than a crosscut saw, the fact that he uses a tractor, bulldozer, or some other huge machine or mechanical contrivance rather than hand tools or a team of horses and a wagon, and the fact that hand tools, machinery or other equipment, irrespective of size, are owned by the employee rather than the employer, does not convert the status of the workman into something other than that of an employee.

The personal labor of an individual having the usual status of an employee is certainly the essence of his bargain

'or contract with his employer to perform work or personal labor under the direction and supervision of the employer in return for the payment of wages. The size of the tools used or the size of the machines operated and the matter of their ownership by the employer, by a mortgagee, a conditional vendor, or even by the employee, does not convert the personal labor of an individual (who is definitely an employee) into something else. His labor is not a nonessential. It is of the essence. The same should be true of an individual whose relationship is one of employment under the category of an independent contractor, as the term should be regarded and interpreted under the 1937 and 1939 amendments to the workmen's compensation act.

In *Norman v. Department of Labor & Industries, supra,* this court disregarded mechanical and somewhat superficial distinctions, saying as to the purpose of the 1937 amendment that it was to broaden the act and to extend its coverage. The court did not ascribe the most extreme definition possible to the term *essence,* as has been attempted subsequently, but defined the term reasonably, saying that an independent contractor was covered by the act if his *personal* efforts constituted the *main* essential in accomplishing the objects of the employment. Thus, individuals whose personal efforts or labor "for any employer coming under" the act may be said to be substantially comparable to the personal efforts or labor of ordinary employees should be entitled to industrial insurance benefits despite the fact that the work of such individuals is done, or their labor is performed, not as ordinary employees but pursuant to an independent contractor relationship—that is, under an arrangement whereby supervision and control by an employer is minimal or nonexistent.

I think the evidence in the instant case is such that a jury might reasonably have concluded that the work, personal efforts, or labor of the Dieckman brothers was comparable to that of individuals who work as ordinary run-of-the-mill employees; in other words, that their personal labor was essential or of the essence as to their performance

of this contract with the Auburn Lumber Company. (See, also, my dissent in *White v. Department of Labor & Industries*, 148 Wash. Dec. 435, 294 P. (2d) 650.)

It is my best judgment that the evidence in the record before the board, considered in the light most favorable to the claimant, was sufficient to have presented a case for the jury. I believe the judgment of dismissal by the trial court should be reversed. Consequently, I dissent.

ROSELLINI, J. concurs with FINLEY, J.