[No. 4590-7-II. Division Two. May 21, 1982.]

LLOYD'S OF YAKIMA FLOOR CENTER, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

746

*Gary G. McGlothlen,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Carol N. Pidduck, Assistant,* for respondent.

THOMPSON, J.*—The question raised in this appeal is whether certain floor covering installers are "workers" within the meaning of the Industrial Insurance Act.

Lloyd's of Yakima Floor Center (Lloyd's) sold floor covering for installation in residences and commercial establishments. Lloyd's offered two options to its customers: (1) it sold floor covering materials and furnished the customer with names of installers, with whom the customer privately contracted for installation; and (2) (the option giving rise to this appeal) Lloyd's negotiated with a customer the terms and price of a "package," which included the cost of the floor materials and the installation labor and materials. Lloyd's, who arranged the installation, for the most part utilized three installers: Messrs. Baskin, Anderson, and Jollen.

The Department of Labor and Industries, following an audit in December 1976, assessed industrial insurance premiums against Lloyd's for the three floor covering installers above mentioned, for the years 1974–1976. The parties do not now dispute these installers were independent contractors and not employees. The question remains whether the essence of their contracts was their personal labor for Lloyd's. The Board of Industrial Insurance Appeals (Board) concluded these installers were "workers" as defined by RCW 51.08.180.[1] The trial court affirmed. We too affirm.

█ We first set out the standard of review. Appeals from the Board are specifically excluded from those portions of the administrative procedure act providing for

---

*Judge Donald H. Thompson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1]RCW 51.08.180 provided at the time of this trial as follows:

"'Worker' means every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment; also every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his or her personal labor for an employer under this title, whether by way of manual labor or otherwise, in the course of his or her employment."

judicial review. RCW 34.04.150. Review is governed by RCW 51.52.115 and .140. In any court proceeding, the findings and decision of the Board are prima facie correct until they are found incorrect by the superior court, by a fair preponderance of the evidence. RCW 51.52.115; *Sacred Heart Med. Ctr. v. Carrado,* 92 Wn.2d 631, 600 P.2d 1015 (1979); *Allison v. Department of Labor & Indus.,* 66 Wn.2d 263, 401 P.2d 982 (1965). Judicial review in the Court of Appeals is governed by RCW 51.52.140 which provides in part:

> [T]he practice in civil cases shall apply to appeals prescribed in this chapter. Appeal shall lie from the judgment of the superior court as in other civil cases.

The trial court varied its findings of fact in only one respect from the Board's findings. Our review is then whether the trial court's findings of fact, to which error has been assigned, are supported by substantial evidence, and whether its conclusions of law flow therefrom. *See Benedict v. Department of Labor & Indus.,* 63 Wn.2d 12, 385 P.2d 380 (1963); *Pend Oreille Mines & Metals Co. v. Department of Labor & Indus.,* 63 Wn.2d 170, 385 P.2d 856 (1963); *Scott Paper Co. v. Department of Labor & Indus.,* 73 Wn.2d 840, 440 P.2d 818 (1968); *Brown v. Board of Indus. Ins. Appeals,* 11 Wn. App. 790, 525 P.2d 274 (1974).

 We start with the established premise that the Industrial Insurance Act is to be liberally applied to achieve its purpose, which is to provide certain expedient relief to those coming within its provisions. *Sacred Heart Med. Ctr. v. Carrado, supra; Montoya v. Greenway Aluminum Co.,* 10 Wn. App. 630, 634, 519 P.2d 22 (1974). In 1937, the Legislature expanded the definition of workman (now "worker") to include coverage for independent contractors when the essence of the contract is his or her personal labor for the employer. RCW 51.08.180. Prior to the 1937 amendment, the independent contractor was not covered by the act nor was the party with whom he contracted required to pay the premiums. *White v. Department of Labor & Indus.,* 48 Wn.2d 470, 294 P.2d 650 (1956). The *White* court pointed

out that it was the Legislature's intention, in expanding the definition of workman, to protect workers

> in those situations where the work could be done on a regular employer–employee basis but where, because of the time, place, manner of performance, and basis of payment, it could be urged that the workman was an independent contractor rather than an employee. . . . It was felt to be desirable, and rightly so, to eliminate the technical issue of whether the workman was an employee or an independent contractor by giving him protection in either situation.

*White,* 48 Wn.2d at 474. The Legislature had in mind broadening the act to

> bring under its protection independent contractors whose *personal efforts* constitute the main essential in accomplishing the objects of the employment, . . .

(Italics ours.) *Norman v. Department of Labor & Indus.,* 10 Wn.2d 180, 184, 116 P.2d 360 (1941).

In determining whether the essence of the contract is personal labor for the employer, we look to the contract, the work to be done, the situation of the parties, and other attendant circumstances. *Cook v. Department of Labor & Indus.,* 46 Wn.2d 475, 476, 282 P.2d 265 (1955). In *White v. Department of Labor & Indus.,* 48 Wn.2d at 474, the court held that personal labor is not the essence of the contract if an independent contractor

> (a) . . . must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools) to perform the contract . . . or (b) who obviously could not perform the contract without assistance . . . or (c) who of necessity or choice employs others to do all or part of the work he has contracted to perform.

(Citations omitted.)

Recognizing that RCW Title 51 is to be liberally interpreted, and that the Legislature has clearly intended to broaden the definition of "worker," we turn to the merits, applying the *White* criteria.

The unchallenged findings of fact concerning the arrangements between the installers and Lloyd's for the

"package" option with which we are concerned are:

> At all pertinent times herein, the three above–mentioned carpet layers were engaged, predominantly, in laying carpet for the employer under verbal contracts, the terms of which were renegotiated every six months or so.

Finding of fact 3.

> During the period in question it was normal procedure for this employer to negotiate directly with a customer the terms and price of a package deal which included the cost of and profit mark–up on the carpet or flooring materials, the installation labor, and the installation materials. The time of installation was generally arranged by the employer ascertaining from the customer a desired date for installation and then communicating with one or more of the three above mentioned carpet layers, after which he would select the carpet layer most readily available. During the time period in question, the understanding between Lloyd's of Yakima and the three carpet layers was that if a package deal customer did not pay his bill, the carpet layer who did the installing work would nevertheless be paid pursuant to their negotiated agreement, and Lloyd's of Yakima undertook the expense of collection and the risk of loss in these situations.

Finding of fact 4.

> During the above–mentioned period, the agreement between the carpet layers and the employer provided that the employer would collect the total cost of the carpet plus the installation charge from the customer, and transmit the amount due for installation to the carpet layer at a later date.

Finding of fact 5.

> The carpet layers each owned a truck, and the tools of their carpet–laying trade. These tools were worth in the aggregate, several hundred dollars, but were mostly relatively small tools, such as belt sanders, and routers, weighing in the neighborhood of ten pounds, and classified as hand tools.

Finding of fact 6.

> During the period in question, the employer did not exercise any control over the methods used by the above–mentioned carpet layers in performing their carpet–lay-

ing services for customers of the employer.

Finding of fact 8. Additionally, the trial court found:

> All of the above–mentioned carpet layers were experts in their field and the agreement between the parties, including the employer, contemplated that if one of them was chosen to lay the carpet that he would perform the services himself. During the period in question none of the three carpet layers had any employees.

Finding of fact 7.

Lloyd's challenges the portion of finding of fact 7 referring to the contemplation of the parties, on the grounds it is not supported by substantial evidence. We disagree. The testimony reveals that Lloyd's utilized the installers because of their superior ability. The agreement required that the installers would install in a professional and businesslike manner. It is reasonable to infer that the parties contemplated that the chosen installer would perform the services himself.

We think the findings support the conclusion that the essence of the contract, the "gist or substance, the vital *sine qua non,* the very heart and soul" of the agreement between Lloyd's and the installers was their personal labor for the employer, Lloyd's. *Haller v. Department of Labor & Indus.,* 13 Wn.2d 164, 168, 124 P.2d 559 (1942). The contract meets the criteria established in *White v. Department of Labor & Indus., supra.*

Regarding requirement (a) of *White,* the installers did furnish tools consisting primarily of the usual hand tools of the trade. These tools were relatively inexpensive, costing approximately $3,000. They were also required to furnish a truck to transport the floor covering materials to the customer's residence. We do not believe that a truck used to transport floor covering materials to a jobsite is the type of necessary machinery or equipment which, under *White,* would take this agreement outside the operation of the act. This requirement is concerned with those arrangements where the *machinery* and not the labor is the *primary object* of the agreement. *See, e.g., Cook v. Department of*

*Labor & Indus., supra* (independent contractors supplied truck, tractor, and saw for logging operation); *Crall v. Department of Labor & Indus.,* 45 Wn.2d 497, 275 P.2d 903 (1954) (independent contractor supplied logging trucks for logging operation); *Dieckman v. Department of Labor & Indus.,* 49 Wn.2d 378, 301 P.2d 763 (1956) (independent contractor supplied small crane to remove logs).[2]

The arrangement also meets requirements (b) and (c) of the *White* test. The contract *could be* and in fact *was* performed by the installer without assistance.

Lloyd's attaches great weight to finding of fact 8, which references "carpet–laying services for customers of the employer." It argues the personal services were not performed for Lloyd's, but for its customers; therefore the agreement did not meet the statutory requirement that the essence of the contract is personal labor for the employer. Lloyd's argument has no merit for two reasons. First, in finding of fact 3, the court and Board found that the installers were engaged "predominantly, in laying carpet for the employer". No error has been assigned to this finding. Assuming findings of fact 3 and 8 are inconsistent, the judgment will be upheld if one or more finding supports the judgment. *Ingle v. Ingle,* 183 Wash. 234, 48 P.2d 576 (1935); *Smith v. Breen,* 26 Wn. App. 802, 614 P.2d 671 (1980). Finding of fact 3 supports the judgment. Second, we do not think the findings are inconsistent. The thrust of finding of fact 8 is that Lloyd's did not control the method used by the installers in laying carpet. We do not read the language, "for customers of the employer," to mean that the services were performed for the customer and not the employer. Furthermore, the unchallenged findings are that the installers were paid by Lloyd's, that Lloyd's undertook

---

[2]*See also Daily Herald Co. v. Department of Empl. Sec.,* 91 Wn.2d 559, 588 P.2d 1157 (1979) where the court, in a somewhat analogous setting, found that newspaper bundle droppers, who under the terms of their contract were required to furnish a motor vehicle and were considered as independent contractors, did nevertheless perform personal services as defined by RCW 50.04.100 for the newspaper.

the expense of collection from the customer and assumed the risk of loss, that Lloyd's arranged the time of installation, and that Lloyd's coordinated the customer's desires with the most readily available installer.

We conclude that these floor covering installers are "workers" within the meaning of RCW 51.08.180.[3]

Affirm.

REED, C.J., and PETRICH, J., concur.

---

[3]RCW 51.08.180 was amended by the 1981 Legislature to exclude certain persons, firms or corporations from coming within the definition of "worker," if registered under RCW 18.27 or licensed under RCW 19.28, and other requirements are met. Laws of 1981, ch. 128, § 2. This case was tried prior to the 1981 amendment.