FILED
COURT OF APPEALS
DIVISION II

2015 MAR 10 AM 8: 36

STATE OF WASHINGTON

BY
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| B&R SALES, INC., | No. 45765-2-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR & INDUSTRIES, | PUBLISHED OPINION |
| Respondent. | |

MAXA, J. — B&R Sales, Inc. appeals the superior court's order affirming the decision of the Board of Industrial Insurance Appeals (Board) that B&R was required to pay industrial insurance premiums for the independent contractors B&R hired to install floor coverings for its customers. The Board's decision was based on a finding that the contractors were "workers" performing personal labor under RCW 51.08.180. B&R argues that the contractors did not qualify as "workers" because they could not perform the contracted work without the use of expensive specialized tools and customized vans, and therefore the essence of their contracts was not personal labor. B&R also argues that the contractors were excluded from mandatory workers' compensation coverage under RCW 51.12.020.

We hold that the contractors were "workers" under RCW 51.08.180 because the primary object of their contracts was their personal labor despite their use of expensive specialized tools

and equipment. We further hold that B&R waived its RCW 51.12.020 argument because it did not make that argument to the Board. Therefore, we affirm the Board and the superior court.[1]

## FACTS

*Premium Assessment*

B&R is a business that sells and installs floor coverings. In 2008, B&R contracted with 17 independent contractors to install materials sold to its clients. Fourteen of the contractors were sole proprietors, and the remaining three were a partnership, a corporation, and a limited liability company. B&R also employs an installer that does the same job as the contractor installers.

The floor covering installation process requires the physical labor, skill, and expertise of a professional installer. And B&R's independent contractors were contractually required to provide the tools they needed for installations. Some of the contractors' tools were specialized, unique to the installation trade, and available only from specialty stores serving professional installers. These tools included large vinyl rollers, power stretchers for carpet, and a specialized saw with a diamond blade for cutting ceramic tile. The contractors' other tools included saws, trimmers, files, and nail guns. The aggregate value of each contractor's tools ranged from $7,000 to $20,000. In addition, the contractors were required under the contract to supply a

---

[1] The Board ruled, and the superior court affirmed, that two of the contractors – Michael Schultz and Charles Soule – did not qualify as workers under the former RCW 51.08.180 (1991) but did qualify as workers under the version of RCW 51.08.180 effective June 12, 2008. DLI did not file a cross appeal on this ruling. Therefore, we affirm the Board's ruling on these two contractors.

customized van capable of transporting and storing their supplies and equipment as well as the materials to be installed.

Each B&R contractor had the right under the contractor agreement to hire additional employees to perform the installation work. However, no evidence was presented that any of the contractors hired additional employees.

In 2009, the Department of Labor and Industries (DLI) performed an audit on B&R and discovered that B&R had not paid industrial insurance premiums for any of its contract installers in 2008. DLI determined that each of the contract installers was a "worker" under RCW 51.08.180. An auditor assessed industrial insurance premiums, interest, and penalties against B&R in the amount of $87,752.23. After B&R requested reconsideration, DLI reaffirmed its order in May 2011.

*Appeal to the Board of Industrial Insurance Appeals*

B&R appealed DLI's assessment. An industrial insurance appeals judge reversed DLI's order. Both B&R and DLI petitioned for review to the Board. The Board issued a decision and made a finding of fact that the essence of the agreements between B&R and the 17 contractors was the contractors' personal labor. The Board concluded that two installers, Michael Schultz and Charles Soule, were not B&R's workers before June 12, 2008 (the effective date of an amendment to RCW 51.08.180), but were B&R's workers after that date.[2]

---

[2] Because the Board determined that DLI's assessment notice and order was partially incorrect, it remanded the case to DLI to recalculate B&R's industrial insurance premiums, interest, and penalties.

45765-2-II

*Appeal to Superior Court*

B&R appealed the Board's decision and order to the superior court. After reviewing the record before the Board and the parties' pleadings, the superior court issued findings of fact, conclusions of law, and a judgment affirming the Board's decision and order.

B&R appeals.

## ANALYSIS

A. STANDARD OF REVIEW

1. Superior Court Review

B&R argues that the superior court erred by applying the substantial evidence standard to the Board's findings of fact. B&R relies on RCW 51.52.115, which provides that the hearing of industrial insurance appeals in the superior court shall be de novo. We hold that the superior court used the correct standard of review.

Washington's Industrial Insurance Act (IIA), Title 51 RCW, includes general judicial review provisions that apply to workers' compensation claims. *Arriaga v. Dep't of Labor & Indus.*, 183 Wn. App. 817, 822, 335 P.3d 977 (2014). RCW 51.52.115 provides that the hearing in the superior court shall be de novo, but based only on the evidence offered before the Board. However, the IIA also contains a specific provision for judicial review of DLI's *assessment* decisions. RCW 51.48.131, which is entitled "Notice of assessment for default in payments by employer – Appeal" provides:

> Further appeals taken from a final decision of the board under this section are governed by the provisions relating to judicial review of administrative decisions contained in RCW 34.05.510 through 34.05.598.

4

45765-2-II

The referenced statutory provisions are in the Administrative Procedures Act (APA), chapter 34.05 RCW.

Based on RCW 51.48.131, Washington courts consistently have held that the APA governs judicial review of the Board's decisions regarding assessment of industrial insurance premiums. *E.g.*, *Xenith Grp., Inc. v. Dep't of Labor & Indus.*, 167 Wn. App. 389, 393, 269 P.3d 414 (2012) (premium assessments based on a finding of "worker" status); *Probst v. Dep't of Labor & Indus.*, 155 Wn. App. 908, 918, 230 P.3d 271 (2010); *Dep't of Labor & Indus. v. Mitchell Bros. Truck Line, Inc.*, 113 Wn. App. 700, 704, 54 P.3d 711 (2002).[3] Accordingly, we hold that the APA, not RCW 51.52.115, determines the superior court's standard of review in an appeal of DLI's assessments.

Under the APA, the superior court applies a substantial evidence standard in reviewing an agency's findings of fact. RCW 34.05.570(3)(e) provides that the superior court can grant relief from an agency order if "[t]he order is not supported by evidence that is substantial when viewed in light of the whole record before the court." Accordingly, we hold that the superior court properly applied a substantial evidence standard in reviewing the Board's findings of fact.

---

[3] B&R cites to *Ruse v. Department of Labor & Industries*, 138 Wn.2d 1, 977 P.2d 570 (1999) and *Allison v. Department of Labor & Industries*, 66 Wn.2d 263, 266, 401 P.2d 982 (1965) for the proposition that a trial court must apply a de novo standard for all appeals from a final board decision. The courts in *Ruse* and *Allison* both analyzed the standard of review arising from RCW 51.52.115 in the context of cases involving workers' compensation benefits. *Ruse*, 138 Wn.2d at 6-7; *Allison*, 66 Wn.2d at 267-68. Neither case addressed a trial court's standard of review for premium and penalty assessment cases.

2. Appellate Review

As noted above, the APA governs judicial review of the Board's decision in an industrial insurance assessment case. RCW 51.48.131; *Xenith Grp.*, 167 Wn. App. at 393. On appeal from the superior court, we sit in the same position as the superior court and review the agency's order based on the administrative record rather than the superior court's decision. *Xenith Grp.*, 167 Wn. App. at 393. An employer challenging the validity of the agency action assessing industrial insurance premiums bears the burden of showing that the premiums were assessed incorrectly. RCW 34.05.570(1)(a); *Jamison v. Dep't of Labor & Indus.*, 65 Wn. App. 125, 133, 827 P.2d 1085 (1992).

RCW 34.05.570(3) sets out nine grounds for invalidating an administrative order. Two grounds are applicable here: (1) the agency's order is not supported by substantial evidence, RCW 34.05.570(3)(e), and (2) the agency erroneously interpreted or applied the law. RCW 34.05.570(3)(d). We review the Board's findings of fact under a substantial evidence standard, which addresses whether the record contains evidence sufficient to persuade a fair-minded, rational person of the finding's truth. *Xenith Grp.*, 167 Wn. App. at 393. We review the Board's legal conclusions de novo, but give "substantial weight to the agency's interpretation when the subject area falls within the agency's area of expertise." *Mitchell Bros.*, 113 Wn. App. at 704.

B. "WORKERS" UNDER RCW 51.08.180

B&R argues that the independent contractors were not "workers" under RCW 51.08.180, which defines "worker" as: "every person in this state who is engaged in the employment of or who is working under an independent contract, *the essence of which is his or her personal labor*

6

*for an employer. . . ."* (Emphasis added.)[4] B&R claims that the essence of the contractors'

contracts was not personal labor because the contractors could not perform the contracted work

without the use of expensive specialized tools and customized vans. We disagree.

1. Standard of Review

The two other divisions of our court have applied different standards of review regarding

the determination of "worker" status under RCW 51.08.180. In *Dana's Housekeeping v.*

*Department of Labor & Industries*, Division One of this court stated that "[w]hether the essence

of the work is personal labor is a factual determination." 76 Wn. App. 600, 608, 886 P.2d 1147

(1995). In *Silliman v. Argus Services, Inc.*, Division Three of this court stated that whether

services constitute "personal labor" within the meaning of RCW 51.08.180 is a mixed question

of law and fact: "[w]hat services Argus provided is a question of fact; whether these services

constitute 'personal labor' within the meaning of the statute is a question of law." 105 Wn. App.

232, 236, 19 P.3d 428 (2001). The court in *Silliman* did not mention *Dana's Housekeeping.*

This division has not squarely addressed this issue.[5] We now apply the mixed question of

law and fact standard as articulated in *Silliman.* The nature of the contracts, what services the

---

[4] Former RCW 51.08.180(1) (1991), which was in effect until June 11, 2008 and therefore
applied for part of the 2008 audit year at issue here, contained a nearly identical definition.

[5] The court in *Dana's Housekeeping* cited to our decision in *Jamison*, 65 Wn. App. 125, to
support its standard of review statement. *Dana's Housekeeping*, 76 Wn. App. at 608. In
*Jamison* we stated without citation or analysis that the Board's factual findings would be upheld
unless they were clearly erroneous, and seemed to treat the Board's conclusion that the
contractors were "workers" as a factual finding. 65 Wn. App. at 131. We also touched on the
issue in *Peter M. Black Real Estate Co. v. Department of Labor & Industries*, 70 Wn. App. 482,
487, 854 P.2d 46 (1993). But neither case expressly states whether the "worker" determination
is a question of fact or a question of law.

independent contractors provided, and other related issues are questions of fact that we review for substantial evidence. But whether based on these facts the contractors are "workers" involves the interpretation of RCW 51.08.180. Statutory interpretation is a question of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014).

2. Essence of Independent Contracts

Our Supreme Court adopted a test for whether a contract's essence is personal labor in *White v. Department of Labor & Industries*, 48 Wn.2d 470, 474, 294 P.2d 650 (1956). The court held that a contract's essence is *not* personal labor if the contract was intended to cover an independent contractor

> (a) who must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools) to perform the contract . . . , or (b) who obviously could not perform the contract without assistance . . . , or (c) who of necessity or choice employs others to do all or part of the work he has contracted to perform.

*Id.* at 474. In analyzing these factors, we consider the contract, the work to be done, the situation of the parties, and other attendant circumstances. *Dana's Housekeeping*, 76 Wn. App. at 608. We focus on the realities of the situation rather than the technical requirements of the test. *Id.*

The issue here is the applicability of part (a) of the *White* test. B&R argues for a strict interpretation of the language in *White*. According to B&R, part (a) of the *White* test applies here because the independent contractors were required to supply specialized equipment – not just the usual hand tools – to perform the contract. We disagree, and we hold that a contractor falls within the RCW 51.08.180 definition of "worker" if the primary object of the contract is to

8

procure the contractor's personal services rather than to procure the contractor's specialized equipment.

Our interpretation of RCW 51.08.180 and part (a) of the *White* test is based on the language of the statute, relevant case law, and the guiding policies of Washington's industrial insurance statute. Our analysis begins with the language of RCW 51.08.180, which states that whether or not a contractor is a "worker" depends on the "essence" of the contract. This language necessarily focuses our analysis on the primary object of the contract. A contractor is not a "worker" if the contracting party's primary object is to secure the use of specialized equipment and the contractor is merely the operator of that equipment. But if the contracting party's primary object is to obtain the personal labor of a skilled contractor, the contractor is a "worker" under RCW 51.08.180 even if the contractor must use specialized equipment in the course of his or her performance of the personal labor.

The facts of *White* are consistent with this interpretation. In *White*, the claimant and her husband owned a "donkey engine" – a specialized machine used in logging operations – and contracted with a timber mill to use the donkey engine to gather and stack felled timber. 48 Wn.2d at 475. The evidence established that the couple was retained to do the work because they owned a donkey engine, and that they could not have performed the contract without the donkey engine. *Id.* As a result, in *White* the primary object of the contract clearly was to secure the use of the donkey engine, while the couple's personal labor was a secondary object of the contract – to ensure the successful operation of the donkey engine. Under those circumstances the couple's personal labor was not the essence of the contract.

We adopted and applied this interpretation of RCW 51.08.180 in *Lloyd's of Yakima Floor Center v. Department of Labor & Industries*, 33 Wn. App. 745, 662 P.2d 391 (1982). That case also involved floor covering installers, although their tools did not satisfy part (a) of the *White* test because the trial court had made an unchallenged finding that they were classified as hand tools. *Lloyd's*, 33 Wn. App. at 750. The installers also were required to furnish a truck to transport floor covering materials, but we held that such a truck was not the type of necessary machinery or equipment referred to in *White*. *Lloyd's*, 33 Wn. App. at 750-51. In addressing this issue, we stated that part (a) of the *White* test was "concerned with those arrangements where the *machinery* and not the labor is the *primary object* of the agreement." *Lloyd's*, 33 Wn. App. at 751.[6]

We followed *Lloyd's* and focused on the primary object of the independent contract in *Jamison*, 65 Wn. App. at 126. In *Jamison*, the issue was whether independent contractors hired to fall and buck timber were "workers" under RCW 51.08.180. *Id.* One of the contractors testified that he often used a "Cat tractor" to perform some of the work under his contract. *Id.* at 131. We rejected the argument that use of the tractor meant that the contractor was not a "worker" under part (a) of the *White* test, stating that the evidence supported the finding that the

---

[6] B&R attempts to distinguish *Lloyd's* because the contractors here were required to guarantee work, indemnify B&R, and provide insurance above the required bond. While B&R correctly notes that the three carpet layers in *Lloyd's* were not required to indemnify their employer, B&R does not explain why this is significant under the *White* test. Moreover, B&R does not explain or cite to precedent that would require us to hold that the contract's primary object was more than personal labor based on these facts. As a result, we are unpersuaded by this attempt to distinguish *Lloyd's*.

contractor's labor and not the tractor was the primary object of the agreement. *Jamison*, 65 Wn. App. at 131.[7]

Our interpretation is further supported by the legislative mandate that industrial insurance statutes "shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment." RCW 51.12.010. To accomplish this legislative directive, our guiding principle in interpreting industrial insurance provisions is to further the purpose of providing compensation to all persons injured in their employment, with all doubts resolved in favor of the worker. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 598, 257 P.3d 532 (2011). This means that we must liberally construe RCW 51.08.180 and resolve any doubt in favor of finding that an independent contractor is a "worker."

Here, unlike in *Lloyd's*, the evidence showed that the contractors needed more than "hand tools" to perform their contracts. The contractors testified that they were required to use large and expensive specialized equipment worth in the aggregate between $7,000 and $20,000.

However, the evidence also was clear that the contractors' skilled, personal labor and not the equipment was the primary object of the contracts. B&R did not enter into the contracts to secure the use of specialized equipment like large vinyl rollers, power stretchers for carpet, specialized saws with a diamond blade for cutting ceramic tile, or similar equipment. Instead, a B&R representative testified that the business relied on the contractor's knowledge – i.e., their

---

[7] Division One of this court used similar language in interpreting RCW 51.08.180, stating that a contractor is a "worker" when the contractor's "personal efforts constitute the main element in accomplishing the objects of the employment." *Dana's Housekeeping*, 76 Wn. App. at 607.

learned skills and experience – to install several different types of floor coverings. In addition, the work the contractors performed was very labor intensive requiring the skillful installation – by hand – of various types of flooring materials. The tools were merely ancillary to the contractors' performance of their skilled, personal labor.

B&R also argues that part (a) of the *White* test applies because the contractor testified that they needed customized vans, modified to carry long rolls of carpet and the necessary tools, in order to do installations. We rejected a similar argument in *Lloyd's*, 33 Wn. App. at 750-51. As with the specialized equipment, securing the use of the contractors' vans clearly was not the primary object of the independent contracts.

Finally, B&R asserted at oral argument that the flooring contractors were providing "professional services," and that as a matter of law professional services do not constitute personal labor under RCW 51.08.180. However, B&R has not cited any authority for this proposition, and nothing in RCW 51.08.180 or in the applicable case law suggests that a contractor is not a "worker" if the personal labor he or she contracted to provide involves "professional" skills. Accordingly, we reject B&R's argument.

We follow *Lloyd's* and interpret RCW 51.08.180 as providing that an independent contractor will be classified as a "worker" unless the primary object of the contract is the specialized equipment. Here, the primary object of the independent contracts – the essence of those contracts – was the contractors' skilled, personal labor and not their specialized equipment.

Therefore, we hold that B&R's contractors constitute "workers" under RCW 51.08.180.[8]

## C. EXCLUSION OF CERTAIN INDIVIDUALS

RCW 51.12.020 excludes from mandatory IIA coverage sole proprietors, partners, certain corporate officers, and certain managing members of LLCs (limited liability company). RCW 51.12.020(5), (8), (13). B&R argues that because all of the independent contractors here fall within one of these categories, they cannot qualify as "workers" under the IIA. However, B&R waived its RCW 51.12.020 argument because it failed to present that argument to the Board.

As noted above, under RCW 51.48.131 the provisions of the APA – and specifically RCW 34.05.510 through 34.05.598 – govern industrial insurance assessment appeals. Under RCW 34.05.554(1), issues that were not raised before the Board cannot be raised on appeal.[9] Our Supreme Court has recognized that "[t]his rule is more than simply a technical rule of appellate procedure; instead, it serves an important policy purpose in protecting the integrity of administrative decisionmaking [sic]." *King County v. Wash. State Boundary Review Bd. for King County*, 122 Wn.2d 648, 668, 860 P.2d 1024 (1993). The court recognized a number of

---

[8]B&R argues that for the contractor that was a corporation (Double T Flooring, Inc.) and the contractor that was an LLC (LT Carpet Works, LLC), the worker was the entity and could only act through their officers, members, or agents. B&R therefore argues that those entities could not and did not perform the contracts without assistance under parts (b) and (c) of the *White* test. However, as with the RCW 51.12.020 argument discussed above, B&R did not make this argument before the Board. As noted above, under RCW 34.05.554(1) issues that were not raised before the agency cannot be raised on appeal. Therefore, we do not address B&R's argument that the corporate and LLC contractors cannot be "workers" under the *White* test.

[9] RCW 34.05.554 does list four exceptions to this rule, but B&R does not argue that any one of the exceptions applies here.

13

other purposes for the rule: discouraging the flouting of administrative processes, protecting agency autonomy, aiding judicial review, and promoting judicial economy. *Id.* at 669.

Here, B&R did not argue that RCW 51.12.020 exempted its contractors from being covered under the IIA at any time before the Board. It did not raise this issue or even reference RCW 51.12.020 in its petition for review, statement of issues, prehearing brief, or reply brief. And as a result, the Board did not rule on the legal merits of this argument or determine whether any of the independent contractors were or were not exempt under RCW 51.12.020. Instead, B&R first made this argument in its opening brief to the superior court. Accordingly, RCW 34.05.554 precludes us from addressing this argument on appeal. *Kitsap Alliance of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 160 Wn. App. 250, 272, 255 P.3d 696 (2011).

B&R argues that it did present the RCW 51.12.020 argument to the Board because the Board's Decision and Order contained section headings regarding "legal entities as [w]orkers." Appellant's Reply Br. at 8. However, these sections addressed whether corporations and LLCs could constitute workers, not whether corporate officers and LLC members were excluded from mandatory IIA coverage under RCW 51.12.020. Further, there must be more than a hint or a slight reference to an issue in the agency record to permit our review. *King County*, 122 Wn.2d at 670.

B&R cites to *Maynard Investment Co., Inc. v. McCann*, 77 Wn.2d 616, 621-622, 465 P.2d 657 (1970), for its argument that we should still consider this argument despite B&R's failure to raise it before the Board. The court in *Maynard Investment* stated that "the courts have frequently recognized that error may be considered for the first time on appeal where the matter

14

45765-2-II

in question affects the public interest." 77 Wn.2d at 622. And there, because the issue considered was contrary to the statute and against the policy of the State of Washington, our Supreme Court permitted appellate review of the issue. *Id.* at 623.

*Maynard Investment* is distinguishable because it does not address the review of an agency decision under RCW 34.05.554. Our Supreme Court in *King County* expressly rejected a an argument similar to B&R's and distinguished *Maynard Investment*, holding that it was required to apply RCW 34.05.554. *King County*, 122 Wn.2d at 670. As a result, the court refused to consider an argument not raised before the agency even though it raised "issues of serious public importance." *Id.* at 668.

We follow *King County* and hold that B&R cannot make its RCW 51.12.020 argument on appeal because it did not raise the argument before the Board. Therefore, we do not address this argument.

We affirm the Board and the superior court.

MAXA, J.

We concur:

JOHANSON, C.J.

LEE, J.

15