# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THE SUNSHINE TIKI HUT, LLC d/b/a THE SUNSHINE TIKI HUT,<br><br>     Appellant,<br><br> v.<br><br>WASHINGTON STATE LIQUOR AND CANNABIS BOARD,<br><br>     Respondent. | No. 55380-5-II<br><br><br>UNPUBLISHED OPINION |

MAXA, P.J. – Sunshine Tiki Hut (STH), a previously licensed cannabis[1] producer and processor, appeals the superior court's affirmance of final orders of the Washington State Liquor and Cannabis Board (LCB). The LCB's orders concluded that STH committed 12 violations of cannabis regulations and as penalties imposed fines and cancelled STH's cannabis license.

The LCB's enforcement division (Enforcement) issued four administrative violation notices (AVNs) alleging that STH had committed multiple violations of cannabis regulations and listed various penalties, including cancellation of STH's license. STH requested an administrative hearing on all of the violations. An administrative law judge (ALJ) granted Enforcement's summary judgment motion regarding 11 of the violations and ruled that the imposed penalties were appropriate. STH filed a petition for review with the LCB in which STH

---

[1] The Supreme Court in *State v. Fraser* recognized that using the term "marijuana" instead of "cannabis" is rooted in racism. 199 Wn.2d 465, 469 n.1, 509 P.3d 282 (2022). The legislature has enacted a law to replace "marijuana" with "cannabis" throughout the Revised Code of Washington with various effective dates depending on the statute." *Id.*; *see* LAWS OF 2022, ch. 16, § 1. Accordingly, as the court did in *Fraser*, we use "cannabis" instead of marijuana unless quoting.

expressly referenced nine of the violations but did not reference the other three. In separate orders for each AVN, the LCB affirmed the ALJ's grant of summary judgment on all of the violations and modified the ALJ's order to grant summary judgment on an additional violation. STH appealed the LCB's final orders to the superior court, which affirmed.

We hold that (1) the ALJ did not err in hearing Enforcement's summary judgment motion despite STH's argument that the motion was filed and served after the deadline for summary judgment motions; (2) STH waived its challenge to the first operating plan, waste disposal and third traceability violations under RCW 34.05.554(1) by not raising those violations in its petition for review; (3) STH's challenges to the remaining violations are not moot even though license cancellation was the penalty for the third traceability violation; (3) the LCB properly granted summary judgment in favor of Enforcement regarding the first surveillance, financier/source of funds, second traceability, and second surveillance violations; and (4), the LCB erred in granting summary judgment in favor of Enforcement regarding the first traceability, misrepresentation of fact, criminal conduct, obstruction, and second operating plan violations because there are genuine issues of material fact regarding those violations.

Accordingly, we affirm in part and reverse in part the LCB's orders granting summary judgment in favor of Enforcement. Although STH's license cancellation as penalty remains, we remand to the LCB for further proceedings consistent with this opinion.

FACTS

*Background*

Mark Coy is the primary owner and licensee of STH. STH obtained a cannabis producer/processor license in 2015, and operated a cannabis producer/processor business in Hoquiam.

From March 2017 to September 2018, Enforcement issued four AVNs, which included 12 separate violations, to STH for violating cannabis regulations. The AVNs listed penalties that ranged from monetary fines to license cancellation. The following descriptions of the facts supporting the violations found by the ALJ and the LCB are from reports prepared by LCB enforcement officers.

*AVN 7R7080A*

*First Operating Plan Violation*

On March 21, 2017, several LCB law enforcement officers conducted an inventory verification on STH's premises. As Coy was giving the officers a tour of the premises, officer Carly Reynoldson noticed two large hoop houses or greenhouses[2] that did not appear on an approved outdoor grow floor plan. Sergeant Vanessa Garris observed that the inside perimeter fencing had either been removed, blown over, or some sections has no fencing at all. No request to change or remove any fence line had been approved.

*Waste Violation*

During the walkthrough, Reynoldson saw a small incinerator and asked Coy about how he disposed of product, Coy told her "Oh we just burn it." Clerk's Papers (CP) at 241. Reynoldson instructed Coy that he could not do that as it was a violation of WAC 314-55-097. Sergeant Stacy Cutlip reported the same observations and response from Coy.

*First Surveillance Violation*

Coy was asked to pull up 45 days of surveillance recordings, which was required by regulation. Coy could only pull up a total of 13 days.

---

[2] According to Coy, the hoop houses were temporary covers to protect the plants from the elements.

*Traceability Violation*

In reviewing cannabis concentrates that were packaged for distribution, Garris found that there were three different lots that were reported incorrectly in the traceability system. The first lot number was reported in traceability as having a quantity of 994 grams, but Garris located less than 300 grams plus 144 individual packaged units and less than 150 grams of unpackaged concentrate. The second lot number was reported in traceability as having a quantity of 1,189 grams, but Garris located less than 100 grams of unpackaged concentrate plus 140 individual packaged units. The third lot was reported in traceability as having a quantity of 1,382 grams, but Garris located less than 100 grams of unpackaged concentrate plus 145 individual packaged units.

Garris observed similar discrepancies when weighing the dried flower cannabis. Several paper bags of cannabis did not match the weight or quantity reported in traceability. There was approximately 3,126 grams of cannabis missing for which Coy had no explanation.

*AVN 7R7312A*

*Financier/Source of Funds Violation* & *Misrepresentation of Fact*

Enforcement received a complaint from Mark Brewer, who claimed that he had invested money in the company. Enforcement confirmed that Coy cashed a check from Brewer in the amount of $5,000.

Enforcement served STH with a request for records and interviewed Coy. Coy stated that he purchased a greenhouse with the $5,000. Coy paid Brewer back $7,700 for the greenhouse and other business supplies.

The investigation also revealed that $42,733.37 had been deposited into Coy's business account. That money was transferred from Coy's personal account, where $74,733.37 had been

deposited from a title company. When asked about the money, Coy stated in a text that he refinanced the business using a mortgage company by the name of Anton Miller and that the loan documents were in the records he turned over.

Enforcement discovered that checks were made out monthly to Anton Miller. Coy stated that Anton Miller was the mortgage company he got the loan through. The investigation revealed that Anton Miller was a man living in Lakewood, not a mortgage company. Officers set up another interview with Coy on November 8, 2017, where Coy stated that Miller was a man who had loaned him $80,000.

*AVN 7D8169A*

*Second Traceability Violation*

On June 16, 2018, the LCB responded to a situation at STH. They discovered around 30 pounds of finished cannabis product in paper bags in a storage room. All but a few of the bags did not have the required traceability tags. But the bags that did have tags did not show up in traceability when the officers checked. None of the STH employees could explain why the product was in the storage room and untagged.

*Second Surveillance Violation*

During the same call, officers walked into the room where the surveillance system was located and noticed that several of the cameras were blacked out. Officers asked one of the employees to show surveillance video from the previous 45 days as well as some dates when equipment had been stolen. But the employee told the officers that he did not have access to the cameras, and that only Coy had access.

*AVN 7D8270A*

*Criminal Conduct*

On September 25, 2018, Hoquiam Police officer David Blundred initiated a traffic stop of a vehicle near STH's facility. As he approached the vehicle, he noticed a large black garbage bag in the back seat. Blundred made contact with Joshua Harris, who was driving, and Doreen Williams. Williams said Harris was giving her a ride home and that she was a volunteer at STH. Blundred asked to search the vehicle, and Harris consented.

As Blundred went to open the black bag, Williams grabbed the bag with both hands and tried to pull it away from him. Eventually Williams released the bag. When Blundred looked into the bag, he saw several large bags of processed cannabis buds. Williams admitted to taking the cannabis from STH. Blundred called Coy, who said that Williams was an STH employee. Coy said that he did not want to see Williams in trouble and declined to press charges.

*Obstruction of LCB Officers*

After the incident with Williams, the police and LCB conducted a follow up inspection on September 27, 2018. The officers knocked on the front door, but no one answered. The officers then walked to a side gate where they saw Williams and called for her to open the gate. But she ignored them. The officers called Coy and told him they saw Williams inside and were there for an inspection check. Several minutes later, Coy called back and told the officers that Williams would be opening the front door. By the time Williams opened the door, the inspection had been delayed by approximately 42 minutes.

The next day officers reviewed the video from the previous day. The video revealed that as the officers were attempting to enter the property, Zackary Payne, another STH employee, was running away and hid behind a greenhouse. The video also revealed that Williams was

6

watching the officers on the camera even though she told officers she was not aware of their presence.

*Second Operating Plan Violation*

The previous day, the officers had observed a motor home parked inside the gates of the premises. After inspecting other parts of the premises, Williams and the officers returned to the RV. Williams admitted that she knew Payne was in the RV. After the officers knocked, Payne eventually came out of the RV. When asked what the RV was used for, Payne said it was used as an office and breakroom. Officers observed cannabis on the floor and drying on cabinet handles. There were also traceability tags on the floor of the RV that appeared to be removed from plants.

*Third Traceability Violation*

The next day Cutlip and other officers conducted a follow-up investigation to check cameras and confiscate the untagged marijuana officers observed the previous day. While photographing the premises, Cutlip noticed a storage room at the end of one of the grow rooms. Cutlip checked the storage room and found three chest freezers that were filled with bags of processed marijuana, some of which had traceability tags, but the majority of which did not.

*Summary of Alleged Violations*

The violations and penalties stated in the four AVNs are summarized in the following chart:

| AVN 7R7080A | Violation Date | Standard Penalty | Aggravated Penalty |
|---|---|---|---|
| First Operating Plan | March 21, 2017 | $1000 | |
| Waste | March 21, 2017 | $2,500 | |
| First Surveillance System | March 21, 2017 | $2,500 | |
| First Traceability | March 21, 2017 | $2,500 | |
| AVN 7R7312A | Violation Date | Standard Penalty | Aggravated Penalty |
| Financier/Source of Funds | July 21, 2016 | Cancellation | |
| Misrepresentation of Fact | Oct. 17, 2017 | Cancellation | |

| AVN 7D8169A | Violation Date | Standard Penalty | Aggravated Penalty |
|---|---|---|---|
| Second Traceability | June 18, 2018 | Not applied | $30,000 |
| Second Surveillance | June 18, 2018 | $10,000 | |
| **AVN 7D8270A** | **Violation Date** | **Standard Penalty** | **Aggravated Penalty** |
| Criminal Conduct | Sept. 24, 2018 | Not applied | Cancellation |
| Obstruction | Sept. 27, 2018 | Not applied | Cancellation |
| Second Operating Plan | Sept. 27, 2018 | Not applied | Cancellation |
| Third Traceability | Sept. 27, 2018 | Not applied | Cancellation |

*Administrative Hearing*

STH requested an administrative hearing for each of the violations, and all were consolidated into a single case by the Office of Administrative Hearings (OAH). The ALJ set February 1, 2019 at 5:00 PM as the deadline for filing and service of summary judgment motions, February 15 as the deadline for responses, and February 22 as the deadline for replies. On February 1, Enforcement faxed 11 pages of its summary judgment motion and the first pages of two of its supporting declarations to the OAH at 4:23 PM. Faxing only a portion of the motion was consistent with an email from the OAH stating that documents would be considered timely if the OAH received the first 15 pages via fax before the due date, as long as a hard copy is mailed the same day. Enforcement then mailed its entire motion with exhibits to the OAH and to Coy before 5:00 PM. Coy received the motion on February 2.

In opposition to summary judgment, Coy filed a separate affidavit that stated, "I would like the tribunal to know that service of Enforcements Motion for Summary Judgment was served late on 2/2/2019. The deadline was 2/1/2019 by 6:00 PM." CP at 1192. This issue was not mentioned in STH's memorandum in opposition to summary judgment. On March 4, STH filed a second reply in which it moved to dismiss Enforcement's summary judgment motion because it was untimely served and filed.

On the merits, Coy submitted a pro se memorandum in opposition to Enforcement's summary judgment motion. He certified under penalty of perjury that the statements he made in

the memorandum were true and correct. The memorandum challenged each of the alleged violations, and included factual statements from Coy.

The ALJ issued an initial order addressing Enforcement's summary judgment motion. The ALJ first denied STH's motion to dismiss the LCB's summary judgment because STH's second reply was untimely and STH did not move to dismiss in its first memorandum in opposition.

The ALJ then granted summary judgment in favor of Enforcement regarding most of the alleged violations. The ALJ denied summary judgment regarding a few of the alleged violations, including the criminal conduct allegation in AVN D8270A as stated in conclusion of law 6.73. Regarding that violation, the ALJ concluded that there was a question of fact whether Williams was acting within the scope of her employment with STH and therefore whether STH was responsible for her conduct.

*Petition for Review*

STH filed a petition for review of the ALJ's initial order with the LCB. STH generally sought review of the ALJ's summary judgment order, asserting that the ALJ erred because "there was a genuine issue of material fact in *almost every* violation." CP at 1410 (emphasis added). The petition specifically referenced most of the violations, but did not reference the first operating plan violation, the waste disposal violation, or the third traceability violation. STH also sought review of the ALJ's denial of its motion to dismiss Enforcement's summary judgment motion based on untimeliness.

Enforcement also petitioned for review with the LCB regarding the ALJ's conclusion of law 6.73, regarding the alleged criminal conduct violation.

The LCB issued four separate final orders addressing each of the four AVNs. The orders for the first three AVNs affirmed the ALJ's initial order and adopted the ALJ's findings of fact and conclusions of law. The order for the fourth AVN, 7D8270A, denied STH's petition for review and granted Enforcement's petition for review. The LCB adopted a modified conclusion of law 6.73, which granted summary judgment in favor of Enforcement regarding the criminal conduct violation.

Regarding penalties, the LCB's order for AVN 7R7312A affirmed cancellation of STH's license and the order for AVN 7D8270A revoked STH's license. Because STH's license was cancelled, the other two orders stated that monetary penalties would not be collected. However, the order for AVN 7R7080A stated that the $8,500 penalty must be paid if LLC members of STH applied for a new license. And the order for AVN 7D8169A stated that the violations would remain on record.

STH appealed the LCB's final orders to superior court. The superior court affirmed the LCB's orders. STH appeals the superior court's affirmance of the LCB's final orders.

ANALYSIS

A.      STANDARD OF REVIEW

Our review of an agency decision is governed by the Administrative Procedure Act (APA). RCW 34.05.570(3). In reviewing a claim under the APA, we sit in the same position as the superior court and review the agency's order based on the administrative record. *Pac. Coast Shredding, LLC v. Port of Vancouver, USA*, 14 Wn. App. 2d 484, 501, 471 P.3d 934 (2020).

If an administrative decision is based on summary judgment, we overlay the APA and summary judgment standards of review. *Haines-Marchel v. Wash. State Liquor & Cannabis Bd.*, 1 Wn. App. 2d 712, 728, 406 P.3d 1199 (2017). We review an agency's summary judgment

ruling de novo, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Hamilton v. Pollution Control Hr'gs Bd.*, 5 Wn. App. 2d 271, 281, 426 P.3d 281 (2018). Summary judgment on an issue is warranted only if there are no genuine issues of material fact. *Id.*

We review an agency's legal conclusions de novo. *Pac. Coast Shredding*, 14 Wn. App. 2d at 502. We give "substantial weight to its interpretations of the law when subjects fall within its area of expertise." *Id.* However, "[w]hile we give agencies great deference to their interpretation of rules within their area of expertise, we may substitute our interpretation of the law for that of an agency." *Quinault Indian Nation v. Imperium Terminal Servs., LLC*, 187 Wn.2d 460, 474, 387 P.3d 670 (2017).

B.     ALJ'S CONSIDERATION OF SUMMARY JUDGMENT MOTION

STH argues that the ALJ erred in hearing and deciding Enforcement's motion for summary judgment because it was untimely. We disagree.

Here, the ALJ set February 1, 2019 at 5:00 PM as the deadline for filing and service of summary judgment motions. Enforcement faxed 11 pages of the motion and the first pages of two of the supporting declarations to OAH before 5:00 PM on February 1, pursuant to OAH's instructions. And Enforcement mailed the complete motion to OAH before 5:00 PM. We conclude that the ALJ did not err in considering the motion.

In any event, STH did not argue that Enforcement's summary judgment motion was not filed on time in its first response. STH mentioned only that it had not been served with the motion until February 2, but did not claim that the motion had not been timely filed with the OAH. STH did not raise the issue of when the motion was filed until its untimely second response. We conclude that the ALJ did not err in ruling that STH had waived its challenge to

the timeliness of Enforcement's summary judgment motion by not including that challenge before the February 22, 2019 reply deadline.

## C.     WAIVER OF UNREFERENCED VIOLATIONS

The LCB argues that STH waived its challenges to the first operating plan violation, the waste disposal violation, and the third traceability violation because it did not raise those challenges in its petition for review to the LCB. We agree.

RCW 34.05.554(1) states that "[i]ssues not raised before the agency may not be raised on appeal." The purpose of this rule is to protect the integrity of the administrative process. *B & R Sales, Inc. v. Dep't of Lab. & Indus.*, 186 Wn. App. 367, 381, 344 P.3d 741 (2015). For an issue to be properly raised, "there must be more than simply a hint or a slight reference to the issue in the record." *King County v. Wash. State Boundary Rev. Bd.*, 122 Wn.2d 648, 670, 860 P.2d 1024 (1993).

Here, STH generally sought review of the ALJ's summary judgment order. In the "Issues Presented for Review" section, the petition stated that the ALJ erred because "there was a genuine issue of material fact in *almost every* violation." CP at 1410. The only reasonable interpretation of this phrase is that not all the violations were being challenged. And then in the body of the petition STH had headings for nine of the violations, but not the other three. Nowhere did the petition state or even suggest that STH was seeking review of the three unreferenced violations.[3]

The LCB also argues that STH waived some of the other violations because it did not present sufficient argument regarding those violations in the petition for review. But we

---

[3] STH argues that he satisfied RCW 34.05.554(1) by asserting challenges to these violations before the ALJ. We disagree. Because a petition for review was filed, the term "agency" in RCW 34.05.554(1) necessarily refers to the LCB rather than to the ALJ.

conclude that under the circumstances of this case, referencing these violations in a bolded heading is sufficient to satisfy RCW 34.05.554(1).

We conclude that STH's petition for review was sufficient to challenge all the violations included in the ALJ's summary judgment ruling. Therefore, we conclude that STH waived its challenges to the first operating plan violation, the waste disposal violation, and the third traceability violation. Therefore, we affirm the LCB's grant of summary judgment in favor of Enforcement regarding those violations.

## D.     MOOTNESS OF REMAINING CHALLENGES

The LCB argues that STH's challenges to the remaining violations are moot because (1) we have affirmed the third traceability violation, (2) license cancellation was the penalty for that violation, and (3) the LCB agreed not to enforce the monetary penalties for several of the remaining violations. We disagree.

First, we conclude below that summary judgment was not appropriate for the first traceability violation. Therefore, what the LCB characterized as the third traceability violation would only be the second traceability violation. It is unclear whether license cancellation still would be the penalty for a second traceability violation.

Second, STH received monetary penalties for the violations in two of the AVNs. Although the LCB asserts that it is not collecting those penalties at this point, the $8,500 penalty will have to be paid if STH submits a new application and the other violations will remain on record. Therefore, STH and Coy potentially face consequences beyond license cancellation. The LCB argues that future consequences are speculative. But we are not prepared to conclude that the uncollected penalties could never impact STH or Coy in the future.

Therefore, we will consider STH's challenges to the remaining nine violations.

13

E.       SUMMARY JUDGMENT REGARDING EACH VIOLATION

STH argues that the LCB erred in affirming the ALJ's grant of summary judgment in favor of Enforcement because genuine issues of material fact exist for all of the alleged violations.  We affirm the LCB's grant of summary judgment in favor of Enforcement regarding the following violations: (1) first surveillance, (2) financier/source of funds, (3) second traceability, and (4) second surveillance.  We reverse the LCB's grant of summary judgment in favor of Enforcement regarding the following violations: (1) first traceability, (2) misrepresentation of fact, (3) criminal conduct, (4) obstruction, and (5) second operating plan.

1.       AVN 7R7080A

a.       First Surveillance Violation

The grant of summary judgment on the first surveillance violation was based on STH's failure to maintain 45 days of video surveillance footage on its recording system.  STH argues that the LCB erred in granting summary judgment in favor of Enforcement on this violation.  We disagree.

Former WAC 314-55-083(3) (2016) requires that surveillance cameras be set up in all controlled areas on the licensed premises.  In addition, "[t]he surveillance system storage device must be secured on the licensed premises in a lockbox, cabinet, closet, or secured in another manner to protect from employee tampering or criminal theft.  All surveillance recordings must be kept for a minimum of forty-five days on the licensee's recording device."  Former WAC 314-55-083(3).  The WACs do not define "surveillance system storage device" or "recording device."

At their inspection, enforcement officers were only able to retrieve 13 days of surveillance footage.  In STH's summary judgment opposition, Coy stated, "The system is such

14

that every week or two we download the video from the system to a hard drive which always contains 45-days' worth of recordings. This hard drive is onsite and can be viewed with a laptop." CP at 1197. Coy also stated that an LCB officer had approved this system.

STH may have complied with the spirit of former WAC 314-55-083(3) by having 45 days of surveillance footage available for review on the premises. However, former WAC 314-55-083(3) requires that the footage be maintained on the licensee's "recording device." A hard drive is not a "recording device." We conclude that summary judgment was appropriate on the first surveillance violation.

### b. First Traceability Violation

The grant of summary judgment on the first traceability violation was based on the discrepancy in the weights of cannabis marked with traceability codes that LCB officers discovered, which resulted in an underreporting of product in STH's possession. STH argues that the LCB erred in granting summary judgment in favor of Enforcement on this violation. We agree.

Former WAC 314-55-083(4) states that

> To prevent diversion and to promote public safety, marijuana licensees must track marijuana from seed to sale. Licensees must provide the required information on a system specified by the WSLCB. All costs related to the reporting requirements are borne by the licensee. Marijuana seedlings, clones, plants, lots of usable marijuana or trim, leaves, and other plant matter, batches of extracts, marijuana-infused products, samples, and marijuana waste must be traceable from production through processing, and finally into the retail environment including being able to identify which lot was used as base material to create each batch of extracts or infused products.

Traceability requires that "[a]ll marijuana, usable marijuana, marijuana-infused products, marijuana concentrates, seeds, plant tissue, clone lots, and marijuana waste must be physically

15

tagged with the sixteen digit identification number generated by the traceability system and tracked." Former WAC 314-55-083(4)(h).

In STH's summary judgment opposition, Coy had a response to the weight discrepancy allegations:

> The officers did not account for all the material in the grow. Licensee had 4 orders staged and over 2,000 joints rolled that they did not account for. The jars were ground material ready to make joints. They were with the bag of marijuana. The bags were marked with the 16-digit number and the jars were with them. All material was accounted for in the LCB system.
> . . .
> The marijuana concentration that appeared to be packaged and ready for distribution in small white plastic containers that Sgt. Garris claimed were reported to state traceability incorrectly were all properly marked in the LCB traceability system.
> All bags of marijuana were accounted for in the LCB system. When licensee combined plants to make a batch or lot they keep the old tags inside the bags in case there is a problem with the product licensee can see which plant it came from. If there is more material than can fit in one bag, they put it into two. Licensee placed one sticker on one bag and mark it "1 of 2" and the other "2 of 2". Licensee then place the bags together on the shelf. The LCB did not keep the material together as they removed it from the store room.
> The officer asked why so much material was missing. Licensee stated that "I didn't know." Licensee did not know because he did not know what they had looked at, accounted for, or even found. After viewing the video and reviewing their reports, Licensee now can confidently say they did not account for all the material we had. Licensee did not have any missing material, the officers failed to account for all the material licensee had onsite. All product and material were present on premises.

CP at 1198-99 (citations omitted).

Viewing the facts and reasonable inferences in the light most favorable to STH, the weight discrepancy resulted from LCB officers not considering that STH was in the middle of processing the cannabis and from the officers' failure to account for all of the cannabis that was present. Coy stated that after reviewing the video and the officers' reports, he was able to confirm that there was no missing cannabis. As a result, there is a genuine issue of fact whether

there was a weight discrepancy in the marijuana in STH's possession. We conclude that the LCB erred in granting summary judgment on the first traceability violation.

    2.    AVN 7R7312A

        a.    Financier/Source of Funds Violation

The grant of summary judgment on the financier/source of funds violation was based on STH's receipt of funds from Brewer and Miller without the LCB's approval. STH argues that the LCB erred in granting summary judgment in favor of Enforcement on this violation. We disagree.

Former WAC 314-55-035(5) (2016) states, "After licensure, a true party of interest, including financiers, must continue to disclose the source of funds for all moneys invested in the licensed business. The WSLCB must approve these funds prior to investing them into the business."

In 2017, "financier" was defined as

> any person or entity, other than a banking institution, that has made or will make an investment in the licensed business. A financier can be a person or entity that provides money as a gift, loans money to the applicant/business and expects to be paid back the amount of the loan with or without interest, or expects any percentage of the profits from the business in exchange for a loan or expertise.

Former WAC 314-55-010(10) (2016).

The evidence showed that Brewer issued a $5,000 check to STH, which STH cashed, and then STH later paid him back. Coy stated that he used the $5,000 to purchase a greenhouse. In STH's summary judgment opposition, Coy stated that "Brewer brought some products that he said worked great. Licensee accepted the products and paid him for them." CP at 1199. Regarding Miller, it is undisputed that Miller loaned $74,733 to Coy, and $42,733 of that amount

was transferred to Coy's business account. Coy stated that he gave Miller a mortgage on the property where STH operated.

STH argues that it did not violate former WAC 314-55-035(5) because neither Brewer nor Miller invested in the licensed business as required in that regulation. Brewer merely provided money so STH could buy a greenhouse. Miller's loan merely allowed STH to convert an asset – its equity in the real property – into cash. However, former WAC 314-55-035(5) does not focus on whether a third person has invested funds in the licensed business. That regulation requires disclosure of the source of funds that the *licensee* invests in the business. Brewer was the source of funds that STH invested in the business by buying a greenhouse. Miller was the source of funds that STH directly invested in the business by transferring some of the money to a business account. Therefore, STH had to obtain the LCB's approval before investing those funds in the business.

In addition, both Brewer and Miller fit into the definition of a financier in former WAC 314-55-010(10). Both loaned money to STH with the expectation that they would be paid back.

We conclude that summary judgment was appropriate on the financier/source of funds violation.

### b.   Misrepresentation of Fact Violation

The grant of summary judgment on the misrepresentation of fact violation was based on Coy's statement to officers that Miller was a mortgage company. STH argues that the LCB erred in granting summary judgment in favor of Enforcement on this violation. We agree.

Former WAC 314-55-050(3) (2016) states that the LCB can suspend or cancel a license if an applicant "makes a misrepresentation of fact, or fails to disclose a material fact to the WSLCB during the application process or any subsequent investigation after a license has been issued."

Here, Coy did state by text that Anton Miller was a mortgage company. But LCB's investigation showed that Miller was an individual, not a mortgage company. STH argues that when Coy referred to Miller as a mortgage company, it was a colloquial phrase meant to convey that Miller was the lender to whom he sent payments. STH claims that the officers simply misunderstood Coy. STH also points out that it previously had provided the loan documents to the LCB showing that Miller was a private lender. Finally, when officers requested a face-to-face interview with Coy, he clarified that Miller was a man and not a company.

In STH's opposition to summary judgment, Coy stated, "Anton Miller is who the Licensee makes his mortgage payments to for the property. . . . This is the information that Licensee provided when asked. There was no misrepresentation of Anton Miller and his role." CP at 1203.

The plain language of Coy's text seemingly stated that Miller was a mortgage company, which would be a misrepresentation. However, texts can be misinterpreted, and viewing the evidence in the light most favorable to STH allows an inference that Coy simply meant to say that Miller was the mortgage holder and not a mortgage company. As a result, a genuine issue of fact exists as to whether Coy made a misrepresentation to the LCB.

We conclude that the LCB erred in granting summary judgment on the misrepresentation violation.

3. AVN 7D8169A

   a. Second Traceability Violation

The grant of summary judgment on the second traceability violation was based on officers finding 30 pounds of marijuana in unmarked paper bags in the storage room on STH's

premises in June 2018. STH argues that the LCB erred in granting summary judgment in favor of Enforcement on this violation. We disagree.

In STH's summary judgment opposition, Coy addressed only a related allegation that officers found marijuana plants that were tall enough to be recorded in traceability. But the ALJ did not grant summary judgment on that allegation. Coy did not challenge the evidence that officers found unmarked bags of marijuana in the storage room. He made only a general statement, in the context of the marijuana plants, that "[a]ll plants and material are properly marked and recorded in the LCB system." CP at 1200.

STH asserts that because Enforcement failed to properly account for separate bags of cannabis in the first investigation, it is reasonable to infer the same thing happened in the second investigation. But that inference is not reasonable. Weighing bags of cannabis that were being processed is completely different than finding unmarked bags of cannabis in a storage room. STH also suggests that the statement that all material was properly marked is sufficient to avoid summary judgment. But such a general, vague statement that arguably related only to the plants does not create a question of fact given the very specific evidence about unmarked bags of cannabis in the storage room.

We conclude that summary judgment was appropriate on the second traceability violation.

### b. Second Surveillance Violation

The grant of summary judgment on the second surveillance violation was based on the allegation that some cameras on the video surveillance screen were blacked out and a second failure to provide 45 days of surveillance footage. STH argues that the LCB erred in granting summary judgment in favor of Enforcement on this violation. We disagree.

As noted above, former WAC 314-55-083(3) requires a licensee to maintain a video surveillance system with camera coverage of all areas where marijuana is grown, processed, moved and/or destroyed. The video surveillance footage must be kept for 45 days on the recording device. Former WAC 314-55-083(3). In addition, all videos must be produced to an LCB officer "upon request." Former WAC 314-55-083(3).

Regarding the failure to produce 45 days of surveillance video, Coy stated that "[t]here was nobody there to access the system," CP at 1200, and "Licensee was not even on premises," CP at 1203. Enforcement's evidence showed that Coy was the only person who had the password to access the surveillance system recordings. STH argues that not providing the password to employees was required by former WAC 314-55-083(3), which requires the surveillance system storage device to be secured to prevent employee tampering.

STH had no way of providing the surveillance footage to officers because no one was available to access the system. Nevertheless, STH did not provide that footage to officers "upon request" as required in former WAC 314-55-083(3). Therefore, we conclude that summary judgment was appropriate on the second surveillance violation.

4. AVN 7D8270A

a. Criminal Conduct Violation

The grant of summary judgment on the criminal violation was based on Williams's possession of a large quantity of cannabis stolen from STH. The ALJ denied summary judgment on this violation, but the LCB granted summary judgment based on Williams's violation of RCW 69.50.401. STH argues that the LCB erred in granting summary judgment in favor of Enforcement on this violation. We agree.

21

WAC 314-55-110(3) states that licensees and their employees must comply with various laws, including chapter 69.50 RCW. WAC 314-55-110(1) states that "licensees are responsible for the operation of their licensed business in compliance with the marijuana laws and rules of the WSLCB." And licensees also "have the responsibility to control their conduct and the conduct of employees . . . on the licensed premises at all times." WAC 314-55-110(4). Former RCW 69.50.401(1) (2015) makes it unlawful for a person to possess a controlled substance with the intent to deliver.

In STH's summary judgment response, Coy stated, "The Licensee was unaware of what [Williams] was doing. She was stealing from the company and as soon as the Licensee became aware of her breaking company and LCB rules she was fired." CP at 1203.

First, STH emphasizes that WAC 314-55-110(4) makes licensees responsible to control the conduct of employees "on the licensed premises." Because Williams was arrested off the premises, STH argues that WAC 314-55-110(4) does not apply. The LCB argues that Williams's diversion of cannabis started on the premises. We conclude that a genuine issue of fact exists as to whether Williams's violation of RCW 69.50.401(1) – which the LCB identified as the criminal violation – occurred on or off STH's premises.

Second, STH argues that a licensee can be liable for an employee's conduct under WAC 314-55-110(4) only if the employee was acting within the scope of employment. Under tort principles, an employer is liable for an employee's conduct only if that conduct was committed within the scope of his or her employment and acting on the employer's behalf. *Anderson v. Soap Lake Sch. Dist.*, 191 Wn. 2d 343, 373, 423 P.3d 197 (2018). The LCB argues that tort principles are inapplicable to marijuana regulations. The LCB apparently adopted this interpretation of WAC 314-55-110(4) in its final order.

22

We agree with STH, and hold that a licensee can be liable for an employee's conduct under WAC 314-55-110(4) only if the employee was acting within the scope of employment. While we give "agencies great deference to their interpretation of rules within their area of expertise, we may substitute our interpretation of the law for that of an agency." *Quinault Indian Nation*, 187 Wn.2d at 474. There is no indication in WAC 314-55-110(4) that a licensee can be strictly liable for an employee's conduct outside the scope of employment. And a genuine issue of fact exists as to whether Williams was acting within the scope of employment at the time she allegedly violated RCW 69.50.401(1).

We conclude that the LCB erred in granting summary judgment on the criminal conduct violation.

### b. Obstruction Violation

The grant of summary judgment on the obstruction violation was based on Williams's and Payne's deliberate delay in granting LCB officers access to STH's premises. STH argues that the LCB erred in granting summary judgment in favor of Enforcement on this violation. We agree.

Former WAC 314-55-185(1) (2016) states that a licensee's premises must be available at all times for inspection. In addition,

> every person being on a licensed premises or with a transporting vehicle, or having charge thereof, must admit an enforcement officer of the WSLCB demanding to enter therein in pursuance of this section in the execution of his/her duty, and must not obstruct or attempt to obstruct the entry of such officer, or refuse to allow an officer to examine the premises, vehicles, records, and products subject to this section of the licensee.

Former WAC 314-55-185(2).

As noted above, licensees "are responsible for the operation of their licensed business in compliance with the marijuana laws and rules of the WSLCB" and "have the responsibility to

23

control their conduct and the conduct of employees . . . on the licensed premises at all times."
WAC 314-55-110(1), (4).

STH does not dispute that Williams and Payne obstructed the officers in their investigation. But in STH's summary judgment opposition, Coy stated, "If [Williams] obstructed the officer, it was without licensee's knowledge or consent. This kind of behavior is outside the scope of work and is not tolerated. Licensee had nothing to do with this incident." CP at 1201. Coy also stated that "[h]e never told any employee to refuse to allow Enforcement full access to the premises." CP at 1203. STH argues that it should not be liable for the employees' actions because it can be inferred that they were obstructing the officers to prevent detection of their own unlawful acts that were not in furtherance of STH's business.

As discussed above, we hold that a licensee can be liable for an employee's conduct under WAC 314-55-110(4) only if the employee was acting within the scope of employment. And a genuine issue of fact exists as to whether Williams and Payne were acting within the scope of employment at the time they obstructed the LCB officers. We conclude that the LCB erred in granting summary judgment on the obstruction violation.

c.    Second Operating Plan Violation

The grant of summary judgment on the second operating plan violation was based on the RV being on STH's property without the LCB's approval. STH argues that the LCB erred in granting summary judgment in favor of Enforcement on this violation. We agree.

As discussed above, former WAC 314-55-020(12) (2016) requires that each applicant submit an operating plan, which includes a site plan that shows the entire operation being proposed. In addition, the licensee must notify the LCB in advance of any changes to its

operating plan, and LCB approval is required before a change may be implemented. Former WAC 314-55-020(12).

In STH's summary judgment opposition, Coy stated that he reviewed the surveillance video and determined that nobody was residing in the RV, it was being moved offsite continuously, and it was moved offsite every night. This evidence is sufficient to create a genuine issue of fact as to whether the presence of the RV constituted a change to STH's operating plan.

The LCB concluded that even if the RV was moved offsite every night, its presence on STH's premises *at any time* without the LCB's approval was a violation of former WAC 314-55-020(11)(b). But we disagree with such a broad reading of former WAC 314-55-020(11)(b).

The LCB claims that because the RV blocked cameras that were on the operating plan, it was an operating plan violation. But former WAC 314-55-020 does not dictate this. The requirement that the cameras record all controlled areas 24 hours per day is contained in former WAC 314-55-083(3). At best, the RV blocking the cameras would be a surveillance system violation, not an operating plan violation.

The LCB also claims that the presence of the RV is an operating plan violation because employees were storing cannabis in it. The LCB does not offer any evidence that the cannabis found in the RV was prepared or processed inside the RV as part of STH's operations. Coy stated, "If there was any material inside the motorhome and it is determined to be from [STH]. License did not approve it and it was stolen material." CP at 1201.

We conclude that the LCB erred in granting summary judgment on the second operating plan violation.

25

5.   Penalties

STH does not challenge the penalties the LCB imposed for the violations that we affirm. Therefore, we affirm those imposed penalties. Significantly, license cancellation was the penalty for the financier/source of funds violation. We reverse the penalties for those violations we find a genuine issue of material fact exists and remand for further proceedings regarding those violations.

Presumably, the penalties for the second and third traceability violations were based on the conclusion that STH had committed the first traceability violation. Because we reverse the grant of summary judgment on the first traceability violation, on remand the LCB should address the penalties on the second and third traceability violations based on that reversal pending final resolution on the merits on the first traceability violation.

F.   ATTORNEY FEES ON APPEAL

STH argues that this court should award it attorney fees and costs under RCW 4.84.350(1). We deny STH's request for attorney fees.

RCW 4.84.350(1) provides that

Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

"Qualified party" includes the sole owner of a corporation only if its net worth does not exceed $5 million. RCW 4.84.340(5).

Here, STH has not provided any evidence that it constitutes a "qualified party" under RCW 4.84.350(1). In addition, even though STH is the prevailing party regarding some of the

violations, we conclude that the LCB's action regarding those violations was substantially justified. Accordingly, we deny STH's request for attorney fees.

CONCLUSION

We affirm in part and reverse in part the LCB's orders affirming the ALJ's grant of summary judgment in favor of Enforcement. Although STH's license cancellation as penalty remains, we remand to the LCB for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

LEE, J.

VELJACIC, J.

27